**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOY LUCRETIA CLARK,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-0023** |
| | : | |
| **DAVITA INC.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**MARSTON, J.** **OCTOBER 1, 2026**

Plaintiff Joy Lucretia Clark initiated this civil action by filing a *pro se* Complaint (Doc. No. 2) against Defendants DaVita Inc. ("DaVita"), Prudential Insurance Company of America ("Prudential"), and Alight Solutions LLC ("Alight"), and sought leave to proceed *in forma pauperis* (Doc. Nos. 7 & 8). The Court granted Clark leave to proceed *in forma pauperis* and dismissed Plaintiff's original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with leave to amend claims not dismissed with prejudice. *See Clark v. Davita Inc.*, No. 26cv23, 2026 WL 1723469, at *7 (E.D. Pa. June 15, 2026). The Court also directed Clark, in light of her filing history, to show cause why she should not be enjoined from filing certain cases in the future. *Id.* Clark has now filed an Amended Complaint (Doc. No. 12 (the "Am. Compl.")) and a Response to the Order to Show Cause (Doc. No. 11.) For the following reasons, the Court will dismiss Clark's Amended Complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Clark will also be enjoined from filing certain civil actions in the future as provided in a separate order.

# I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

## A. Employment History at DaVita

Clark worked at Defendant DaVita as a full-time Patient Care Technician. (Am. Compl. ¶ 20.) During her employment she became eligible to participate in DaVita's employee benefits plan governed by the provisions of Employee Retirement Income Security Act of 1974 ("ERISA"), which included medical, dental, vision, life insurance, accidental death and dismemberment, disability-related, and retirement benefits. (*Id.* ¶ 21.) DaVita informed Clark that eligible full-time employees were automatically enrolled in employer-paid basic life insurance and accidental death and dismemberment coverage and that that coverage was provided through group insurance policies and not individual insurance contracts. (*Id.* at ¶ 92.)

Clark developed serious medical conditions that prevented her from performing the essential functions of her job. (*Id.* at ¶ 25.) She sought treatment from multiple healthcare providers and requested a medical leave of absence consistent with DaVita's leave administration procedures. (*Id.* ¶ 26.) DaVita approved Clark's medical leave request. (*Id.* ¶ 27.) Throughout her medical leave, Clark was under the continuous care of treating physicians and specialists. (*Id.* ¶ 28.) She says that she "consistently communicated" with DaVita during that time about her medical condition, employment status, leave administration, and employment benefits, and she responded to DaVita's requests for additional medical information as they were made. (*Id.* ¶¶ 29–31.) She intended to return to work at DaVita as soon as medically able to do

[1] The factual allegations are taken from Clark's Amended Complaint. (Doc. No. 12.) An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). The Court adopts the pagination assigned by the CM/ECF docketing system.

so. (Am. Compl. ¶ 33.) Clark sought continued leave as an accommodation under the Americans with Disabilities Act ("ADA"). (*Id.* ¶ 34.) Clark's condition remained "under active evaluation" and her physicians could not provide a return-to-work date, but instead stated that her return was "To Be Determined," which she communicated to DaVita. (*Id.* ¶¶ 38–39.)

On or around May 20, 2025, "Defendant Nikki Stewart, acting as Defendant DaVita's Leave of Absence and ADA Case Manager, advised Plaintiff in writing that [Clark's] request for leave as a reasonable accommodation under the ADA had been approved through December 31, 2025."[2] (*Id.* ¶ 41.) DaVita apparently added that Clark's position could be filled because of the company's business needs, but that she would remain employed during the approved leave period. (*Id.* ¶ 42.) Clark alleges that DaVita also advised that if Clark became medically able to return to work during the approved leave period, DaVita "would discuss available employment opportunities for which Plaintiff was qualified." (*Id.* ¶ 43.) Clark thus believed that she remained employed while on ADA leave, but she remained unable to work because of her continuing medical condition. (*Id.* ¶¶ 44, 46.) DaVita advised Clark that she had not elected Long-Term Disability coverage during open enrollment and was accordingly ineligible for those benefits, so Clark remained unpaid while on approved medical leave. (*Id.* ¶ 47.)

At some point during Clark's leave of absence, DaVita requested updated medical documentation concerning the anticipated duration of her leave, and Clark in turn requested from her doctor updated return-to-work documentation. (*Id.* ¶¶ 52–54.) After confirming Clark's updated mailing address, Stewart allegedly told Clark that an updated leave approval letter would be sent to Clark via overnight mail to assist Clark in extending the approved leave of absence. (*Id.* ¶ 58.) While apparently awaiting a response from her physician, Clark unexpectedly

---

[2] Clark refers to Nikki Stewart as "Defendant," (*see* Am. Compl. ¶ 41), but Clark did not identify her as a party in the Amended Complaint (*see id.* at 2–3).

received a communication concerning an exit interview. (Am. Compl. ¶ 61.) Clark had not resigned her position and had not received notice of termination. (*Id.* ¶ 62.) When she contacted DaVita, DaVita conveyed that her employment was processed as terminated effective March 17, 2026, because Clark had not provided sufficient information regarding the duration of her continued medical leave. (*Id.* ¶¶ 63–67.) DaVita confirmed that the termination notice had been mailed and returned as undeliverable, that Clark had not received notice of termination before the exit interview communication, and that a request to reinstate her employment had been submitted. (*Id.* ¶¶ 68–70.) Stewart wrote to Clark that her employment had been reinstated, and "the system views it as never having happened." (*Id.* ¶¶ 72–73.) After reinstatement, Clark has remained on approved unpaid ADA leave because of her medical condition and has not returned to work, and she has continued participating in the leave administration process. (*Id.* ¶¶ 76–78.)

**B. Communications with DaVita, Prudential, and Alight Solutions**

According to Clark, DaVita "served as Plaintiff's employer, sponsor of one or more ERISA-governed employee welfare benefit plans, and the entity responsible for numerous employment-related communications concerning Plaintiff's leave, benefits, and participant rights." (*Id.* at 2.) Defendant Prudential "issued and/or administered group insurance benefits made available through DaVita's welfare plans, including life insurance and disability-related benefits, and communicated directly with Plaintiff concerning those benefits." (*Id.* at 3.) Defendant Alight Solutions "performed recordkeeping, enrollment, eligibility, participant recordkeeping, and other administrative functions relating to certain DaVita employee benefit plans and communicated with Plaintiff concerning benefit records, enrollment information, and plan administration." (*Id.*)

Throughout her medical leave, Clark allegedly attempted to monitor and sought information and records pertaining to her employee benefits and employment records from the Defendants. (Am. Compl. ¶¶ 79–80, 95, 96, 107, 114, 116.) Clark maintains that she "reasonably believed that, because she remained an employee on approved medical leave, she retained rights afforded to participants under the applicable ERISA-governed employee benefit plans." (*Id.* ¶ 81.) She experienced "increasing difficulty" obtaining records and information that had been available during her active employment. (*Id.* ¶ 82.) When she contacted DaVita to obtain access and information to "employment records, payroll information, tax documents, benefits elections, participant records, and other information necessary to understand and administer her employee benefits," she learned that different Defendants performed different administrative functions, and DaVita directed her to communicate with Human Resources, Payroll, Benefits Administration, Leave Administration, Prudential, Alight, and other administrative personnel. (*Id.* ¶ 83–84, 93–94.) Clark had difficulty determining which defendant was responsible for maintaining particular records, benefits determinations, or production of documents. (*Id.* ¶¶ 86–87, 91, 105, 112–113, 118–119.)

On or around February 24, 2025, Clark allegedly submitted a written request to DaVita requesting documents including the Summary Plan Descriptions ("SPD"), governing plan documents, trust agreements, adoption agreements, Form 5500 Annual Reports, administrative procedures, plan amendments, loan policies, and IRS determination or opinion letters. (*Id.* ¶ 100.) She also purportedly asked for "documents identifying the Plan Administrator and other entities responsible for administering the employee benefit plans." (*Id.*) On or around March 10, 2025, DaVita produced the SPD, Base Plan Document, Prospectus, Trust Agreement, Adoption Agreement, Form 5500 Annual Report, Administrative Procedures, Plan Amendments, Loan

Policy, and IRS Opinion Letter. (Am. Compl. ¶ 102.) Clark claims that she reviewed the materials and "request[ed] clarification regarding additional documents, the identity of the Plan Administrator, participant rights, plan administration, and records that Plaintiff believed had not been produced or adequately explained." (*Id*. at ¶¶ 103–104.) Clark does not identify any specific documents that she requested but were missing from DaVita's production of documents on March 10, 2025, but alleges that "disputes remained" concerning the completeness of the Defendants' responses. (*Id*. ¶ 105.)

**C. Relevant Procedural History**

On January 5, 2026, Clark filed this civil action raising claims that Defendants violated various provisions of ERISA.[3] (Doc. No. 2 at 3–5.) In her original Complaint, she raised claims concerning the disclosure of requested plan documents (Counts I and II), her benefits and portal access (Count III, and IV), the sufficiency of review (Count V), and for equitable relief (Count VI). The Court dismissed Counts V and VI with prejudice, and dismissed Counts I through IV without prejudice and granted Clark leave to amend. *Clark*, 2026 WL 1723469, at *7.

She subsequently filed an Amended Complaint, again alleging violations of ERISA. (Am. Compl. at 12–14.) The Amended Complaint raises four claims: Count I alleges a failure to disclose plan documents, Count II seeks a declaration of her rights for benefits under the ERISA plan; Count III asserts a breach of fiduciary duty; and Count IV requests equitable relief. Clark also separately requests monetary, declaratory, and equitable relief. (*Id*. at 14–15.)

Separately, in the Court's Memorandum dismissing the original Complaint, the Court also provided a background of Clark's eleven cases she filed here within a period of fifteen

[3] Prior to that, in October 2025, Clark filed a civil suit in the United States District Court for the District of Colorado against DaVita, Alight Solutions, and Prudential, alleging the Defendants violated ERISA. *See Clark v. DaVita*, No. 25cv3151 (D. Colo.). The court dismissed that action on December 18, 2025, due to an apparent deficiency in her complaint that Clark failed to resolve. *See id.*, Doc. No. 15.

months, none of which have passed the minimal screening analysis pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id*. at *6. The Court ordered Clark to show cause why she should not be enjoined from filing certain cases, and Clark submitted a Response. (Doc. Nos. 10–11.)

## II. STANDARDS OF REVIEW

### A. Statutory Screening

Under 28 U.S.C. § 1915(e)(2)(B), the court must screen the Amended Complaint and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from an immune defendant. *Id.* § 1915(e)(2)(B)(i)-(iii). Whether an amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). At this stage, the Court accepts the facts alleged in Clark's Amended Complaint as true, draws all reasonable inferences in her favor, and asks only whether the Amended Complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Clark is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244). However, "pro se litigants

still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (internal quotation omitted).

### B. Enjoining a Plaintiff from Future Suits

"When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, . . . [the court] is entitled to resort to its power of injunction and contempt to protect its process." *See Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990). Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court may enjoin "abusive, groundless, and vexatious litigation." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) (citing *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982)). The "broad scope" of this power is limited by "two fundamental tenets of our legal system — the litigant's rights to due process and access to the courts." *Brow*, 994 F.2d at 1038.

## III. DISCUSSION

### A. Plaintiff's ERISA Claims Must All Be Dismissed

"ERISA governs the rights and obligations of participants and beneficiaries of employee pension benefit plans." *See Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13cv552, 2015 WL 3938925, at *4 (D.N.J. June 25, 2015) (citing 29 U.S.C. § 1321(a)), *aff'd*, 650 F. App'x 106 (3d Cir. 2016). A participant or beneficiary of the benefit plan may "bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)). However, generally, a litigant must exhaust administrative remedies before seeking relief in federal court for the denial of benefits. *Harrow v. Prudential Ins. Co. of Am.*,

279 F.3d 244, 252 (3d Cir. 2002) (citing cases); *see also Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir 1990) ("Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."). Exhaustion may not be required where a violation of a substantive statutory provision is alleged. *Harrow*, 279 F.3d at 252. Thus, a participant or beneficiary of an ERISA plan may bring a civil action alleging liability pursuant to ERISA § 502(c)(1)(B) for an administrator's violation of disclosure requirements, without first exhausting available remedies. *Piscopo*, 2015 WL 3938925, at *4 (citing ERISA § 502(c)(1)(B)); *In re Wargotz v. NetJets, Inc.,* No. 09cv4789, 2010 WL 1931247, at *5 (D.N.J. May 13, 2010)). But "[p]laintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims." *Harrow*, 279 F.3d at 253.

The Court concludes that, despite the guidance provided in the prior Memorandum in this case, Clark has not stated a plausible claim for any of the ERISA claims she seeks to bring in this action in her Amended Complaint, specifically: the failure to disclose documents (Count I), for clarification of rights of entitlement to benefits (Count II), or a breach of fiduciary duty (Count III). The Court will dismiss these claims for the reasons stated below. And Count IV, which seeks equitable relief, is merely a repackaged version of Count VI from Clark's original Complaint, which was previously dismissed with prejudice, so it will also be dismissed. *See Clark*, 2026 WL 1723469, at *2 n.3 & *7.

**1. Disclosure of Plan Documents (Count I)**

Clark once again contends that the Defendants did not comply with a statutory requirement that certain documents requested by a plan participant be provided within thirty days, and that Defendants are subject to statutory penalties pursuant to ERISA § 502(c)(1)(B) for their noncompliance. Under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), plan administrators are

required to furnish a copy of the SPD "and other instruments under which the plan was established 'upon written request of any participant or beneficiary.'" *Kollman v. Hewitt Assoc.*, 487 F.3d 139, 143 (3d Cir. 2007) (quoting ERISA § 104(b)). A plaintiff alleges a violation of the disclosure statute by alleging that she is a plan participant or beneficiary, that she made a written request to the plan administrator, and that the plan administrator failed to respond within thirty days. *Id.*; *see also Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16cv1649, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) ("To state a cause of action under Section 502(c)(1)(B), a plaintiff must plead: (1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request." (quotation marks and citation omitted)). The written request must specifically name the precise documents sought by the plaintiff. *Kollman*, 487 F.3d at 145 (concluding that the "clear notice test" applies, which requires that the plan participant gives clear notice to plan administrator of the documents requested). Courts "look to whether 'either the request or the response indicated that [defendant] knew or should have known that [plaintiff] had requested a copy of any document relating to the . . . [p]lan.'" *Id.* (quoting *Fisher v. Metro. Life Ins. Co.*, 805 F.2d 1073, 1077 (5th Cir. 1990)).

Clark has not stated a plausible claim under § 502(c)(1)(B). She relates only a single instance, on February 24, 2025, when she requested specific documents in writing, including the SPD, governing plan documents, trust agreements, adoption agreements, Form 5500 Annual Reports, administrative procedures, plan amendments, loan policies, and IRS determination or opinion letters. (*Id.* ¶ 100.) Clark also alleges that, on March 10, 2025—less than thirty days after her request—DaVita produced the SPD, Base Plan Document, Prospectus, Trust

Agreement, Adoption Agreement, Form 5500 Annual Report, Administrative Procedures, Plan Amendments, Loan Policy, and IRS Opinion Letter. (*Id.* ¶ 102.) From her own list, it appears that DaVita produced everything that she asked for. While Clark obliquely states that there were "records that Plaintiff believed had not been produced or adequately explained" and that "disputes remained" concerning the completeness of DaVita's responses, these vague assertions are insufficient to state a violation under § 502(c)(1)(B). *See Kollman*, 487 F.3d at 144; *Krauter v. Siemens Corp.*, 725 F. App'x 102, 111 (3d Cir. 2018) (acknowledging the plaintiff's duty to plead a violation of an ERISA statutory duty with specificity); *Piscopo*, 2015 WL 3938925, at *6 (dismissing plaintiff's § 502(c)(1)(B) claim where plaintiff vaguely alleged that he "requested information on the plan").

Clark has again failed to state a plausible claim that the disclosure provisions of ERISA were violated. The Court will therefore dismiss Count I with prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

**2. Claim Seeking "Clarification of Rights" (Count II)**

In Count II of her Amended Complaint, Clark asserts a "Claim for Benefits and Clarification of Rights," in which she alleges that "disputes arose" concerning her rights to certain benefits during her medical leave, and she asks the Court to interpret unspecified provisions of her employee benefit plan governing "the administration of life insurance benefits, disability-related benefits, retirement benefits, participant rights, employment status, and other employee welfare benefits." (Am. Compl. ¶ 145.) She did not include a copy of the plan, nor does she recite any particular provisions of the plan she apparently questions. It is not even clear if there is a decision by a plan administrator with which she disagrees, or why; instead, Clark vaguely states that she had "sought clarification regarding the legal effect of her approved ADA

leave, subsequent termination without notice, reinstatement, and continued unpaid employment status on her rights under the applicable employee benefit plans." (*Id.* ¶ 147.)

As the Court explained in its prior Memorandum, before a participant or beneficiary brings a civil action in federal court challenging the denial of benefits pursuant to § 1132(a)(1)(B), she must exhaust administrative remedies. *See, e.g., Clark*, 2026 WL 1723469, at *3 (citing *Harrow*, 279 F.3d at 252); *id.* at *4 (citing *D'Amico v. CBS Corp.*, 297 F.3d 287, 292 (3d Cir. 2002)). Despite that instruction, nowhere in the Amended Complaint has Clark alleged that she has sought relief through any process provided under the employee benefits plan. She maintains that she "exhausted every reasonable avenue to obtain complete information regarding her employee benefits," and that "further administrative efforts would have been futile because Plaintiff repeatedly sought clarification and documentation from the responsible entities without obtaining complete responses." (*Id.* ¶¶ 123, 125.) First, Clark has not alleged that she has availed herself of *any* administrative procedures available *under the provisions of the plan*; rather, Clark "sought clarification" through her own independent efforts. (*Id.* ¶¶ 146, 147.) Tellingly, Clark refers to "disputes [that] arose" (*id.* ¶ 145), or "disputes [that] remained" (*id.* ¶ 124), about her rights under the benefits plans, but she never articulates efforts taken through any formalized process to confirm them.

Further, Clark has provided no factual support for her statement that exhaustion was futile. Her own conclusory declaration of futility does not make it so. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (explaining that, at the motion to dismiss stage, the Court accepts plausible factual allegations as true but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (same). Rather, in order to invoke the futility exception to exhaustion, a

party must "provide a clear and positive showing" that additional attempts to seek redress under the plan would be futile. *D'Amico,* 297 F.3d at 293. "Whether exhaustion will be excused on futility grounds depends on several factors, including: (1) whether Plaintiffs diligently pursued administrative relief; (2) whether Plaintiffs acted reasonably in seeking immediate judicial review under the circumstances; (3) the existence of a fixed policy denying benefits; (4) the failure of Defendant to comply with its own internal procedures; and, (5) testimony of plan administrators that any administrative appeal would be futile." *Balmat v. CertainTeed Corp.*, No. 04cv2505, 2004 WL 2861873, at *3 (E.D. Pa. Dec. 9, 2004) (citing *Harrow*, 279 F.3d at 250) (dismissing ERISA claim and rejecting futility of exhaustion argument where plaintiffs failed to engage in the administrative appeals process provided in plan). Clark has not plausibly alleged any of these factors, including the requirement that she allege diligence in pursuing administrative remedies. As noted above, Clark does not allege that she utilized any of the administrative remedies provided under her benefits plan to the extent that she had any "disputes" over her benefits. She broadly states that she "repeatedly sought clarification" as to unspecified issues with DaVita, Prudential, and Alight Solutions, and asserts not that they were unresponsive, but that their responses did not clear up her confusion "concerning the proper interpretation of the governing plan provisions and Plaintiff's rights as a participant." (Am. Compl. ¶¶ 146-148.) However, the statement that she "sought clarification" is not the equivalent of exhaustion; Clark provides no insight on exactly what efforts she made, when she made them, how the parties' relative positions were communicated, and whether they conformed or were a part of the plan's administrative rubric. Accordingly, she has not plausibly alleged that she pursued diligently administrative remedies. *Balmat*, 2004 WL 2861873, at *3–4 (concluding that plaintiffs failed to plausibly allege where they did not allege any attempt to appeal the denial

of their benefits internally). The Court will dismiss Count II for failure to state a claim, but will do so without prejudice to Clark pursuing her available remedies outside of this Court.

**3. Breach of Fiduciary Duty (Count III)**

In Count III, Clark attempts to allege a breach of fiduciary duty claim, but she again fails to state a claim. The elements for alleging a claim for a breach of fiduciary duty imposed under 29 U.S.C. § 1104(a)(1) are: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007), as amended (Dec. 21, 2007)), *abrogated on other grounds*, *Mator v. Wesco Distrib., Inc.*, 104 F.4th 172 (3d Cir. 2024). "[A]pplying the pleading standard discussed in [*Iqbal* and *Twombly*], to ERISA fiduciary breach claims will necessarily be context specific . . . ." *Mator*, 102 F.4th at 184 (quotation marks and citations omitted). As noted above, Clark has not alleged any facts concerning the provisions of her alleged ERISA-covered plan and the duty owed to her during the time in question. She also fails to identify what constituted the breach or any loss to the plan caused by the alleged breach. *See Mator*, 102 F.4th at 184. Rather, she has simply made wholly conclusory and vague allegations of liability, which will not suffice to state a claim. *See Twombly*, 550 U.S. at 555. For these reasons, Clark has not pleaded a plausible claim for a breach of fiduciary duty, and the Court will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Clark Will Be Enjoined from Filing Certain Cases in the Future**

The Court previously recounted the relevant background of Clark's litigation history, which provides the basis for the action it will take now. *Clark*, 2026 WL 1723469, at *5–7. To briefly recap, Clark has now filed a total of **eleven** civil actions in this Court since October 2024, which has been detailed in several of the Court's Memoranda. *See, e.g., Clark v. PNC Bank*, No.

25cv885, 2025 WL 1698702, at *1 n.2 (E.D. Pa. June 17, 2025); *Clark v. Azzarelli*, No. 25cv7122, 2026 WL 1045066, at *9 n.8 (E.D. Pa. Apr. 17, 2026). Clark has moved to proceed *in forma pauperis* in all eleven cases, and each time the Court has obliged her request and granted the motion. In the summer of 2025, given the volume of cases she filed within four months and that **none** alleged a viable legal basis despite the wide variety of claims Clark sought to bring, the Court strongly cautioned her in its June 17, 2025 memorandum in *Clark v. PNC Bank* that "the continued abuse of the judicial process and of *in forma pauperis* status may result in the denial of an application to proceed *in forma pauperis* in the future. *See Douris v. Middletown Township*, 293 F. App'x 130, 132 (3d Cir. 2008) (*per curiam*) (affirming district court's denial of *in forma pauperis* motion where litigant 'repeatedly and unsuccessfully filed lawsuits' claiming civil rights violations, which 'required the expenditure of significant judicial resources')." *See Clark*, 2025 WL 1698702, at *1 n.2. Clark's seven cases filed within four months of 2025—which alleged no legally meritorious issue amongst the multitude of claims raised—posed a significant burden on the Court's resources, and as noted, Clark was duly warned against abusing the judicial process and the consequences for doing so.

But the Court's warning failed to deter Clark. As in her previous seven cases, Clark filed four new matters between December 2025 and January 2026 and requested leave to proceed *in forma pauperis* in each of them.[4] With the filing of this Memorandum, she has now not stated a claim in any of the **eleven** cases she has filed, despite being provided generous construction of her pleadings and opportunities to amend her complaints in many of the actions. In sum, Clark's

[4] While a particular litigant may have previously been granted leave to proceed *in forma pauperis* in prior actions, the statute does not authorize the Court to permit a new action to be commenced based on "prior grants of pauper status." *Piskanin v. Ct. of Common Pleas of Lehigh Cnty. & all of its Judges*, 359 F. App'x 276, 278 (3d Cir. 2009) (*per curiam*). Rather, "[e]ach new lawsuit filed requires an up-to-date affidavit of poverty[.]" *Id.*

demonstrated history of filing multiple non-meritorious cases at the same time involving varying subject matter, claims, and defendants, and the fact that she continued her conduct after being warned, necessitates that the Court address her clear pattern of abusing the *in forma pauperis* privilege with an injunction. *See Butler v. Dep't of Justice*, 492 F.3d 440, 445 (D.C. Cir. 2007) (explaining that a litigant's right of access to courts "must be counterbalanced by the traditional right of courts to manage their dockets and limit abusive filings." (cleaned up)).

The United States Court of Appeals for the Third Circuit has held that district courts "must comply with the following requirements when issuing such prohibitive injunctive orders against pro se litigants." *Id.* First, the Court should not restrict a litigant from filing claims "absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.* (citing *Matter of Packer Ave. Assoc.*, 884 F.2d 745, 747 (3d Cir. 1989)). Second, the Court "must give notice to the litigant to show cause why the proposed injunctive relief should not issue." *Id.* (citing *Gagliardi v. McWilliams*, 834 F.2d 81, 83 (3d Cir. 1987)). Third, the scope of the injunctive order "must be narrowly tailored to fit the particular circumstances of the case before the District Court." *Id.* (citing *Chipps v. U.S. Dist. Ct. for the Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989)). Issuing a prefiling injunction to curtail meritless litigation has been deemed to be an appropriate use of the Court's authority. *See Kent v. Philadelphia Dep't of Hum. Servs.*, 813 F. App'x 736, 738 (3d Cir. 2020) ("The District Court reasonably concluded that these repeated, meritless lawsuits predicated on the same allegations warranted restrictions on Kent's litigating opportunities."); *Yoder v. Wells Fargo Bank, N.A.*, 765 F. App'x 822, 824 (3d Cir. 2019) (holding that a *pro se* litigant's "series of meritless lawsuits show[ed] an abuse of the court system and an unwillingness to accept adverse judgments that, because it [was] likely to continue, warrant[ed] restrictions on [litigant's]

litigating opportunities"); *Tilbury v. Aames Home Loan*, 199 F. App'x 122, 127 (3d Cir. 2006) (holding that injunction prohibiting litigants from filing repetitive cases related to their mortgage and against numerous defendants was narrowly tailored where injunction prohibited filing of newly filed pro se cases and requiring representation by a licensed attorney).

Here, the Court concludes that exigent circumstances are shown by Clark's filing of eleven groundless cases within just fifteen months, in each of which she sought and was granted leave to proceed *in forma pauperis*. *See Brow*, 994 F.2d at 1038; *see also United States v. Gumbs*, No. 23cv1309, 2023 WL 8643629, at *1 (3d Cir. Dec. 14, 2023) (affirming the District Court's finding that the litigant's "many baseless filings over several years created exigent circumstances"). Further, this Court's June 15, 2026 Show Cause Order (Doc. No. 10) provided Clark with the notice required by *Brow*, 994 F.2d at 1038. Clark filed a response on June 15, 2026, in which she argued that the injunction should not enter because she has "filed each action based upon a genuine belief that her legal rights have been affected" and without intent to harass or delay. (Doc. No. 11 at 2.) Yet the fact remains that the Court warned her in June 2025 that her continued abuse of the judicial process by filing meritless lawsuits would warrant consequences, and she chose, six months later, to file the first of *four* more baseless lawsuits and seek leave to proceed *in forma pauperis*. And, despite being given opportunities to amend, she has never been able to cure the defects in her claims.

Accordingly, Clark will be enjoined for **two years** after the date of entry of this Order from filing new civil, non-Social Security or non-*habeas* matters on an *in forma pauperis* basis unless she includes with her complaint and *in forma pauperis* application (1) a certification indicating that the claims she seeks to present have arguable merit (2) that is signed by a licensed attorney, and (3) includes that attorney's bar number and contact information. *See, e.g.*, *In re*

*McDonald*, 489 U.S. 180, 180 (1989) (enjoining litigant from filing extraordinary writs *in forma pauperis*: "We also direct the Clerk not to accept any further petitions from petitioner for extraordinary writs pursuant to 28 U.S.C. §§ 1651(a), 2241, and 2254(a), unless he pays the docketing fee required by Rule 45(a) and submits his petition in compliance with this Court's Rule 33."); *Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 311 (D.C. Cir. 2008) ("We revoke Hurt's IFP privilege, dismiss all his appeals pending before this Court and direct the Clerk of the Court to refuse to accept any more of Hurt's civil appeals that are not accompanied by the appropriate filing fees."); *Butler*, 492 F.3d at 445–46 (D.C. Cir. 2007) (examining the number, content, frequency, and disposition of prior filings to determine whether there is a pattern of abuse justifying action to limit access to *in forma pauperis* status). The Court will also exempt any hypothetical future cases filed by Clark which seek habeas relief from present incarceration. The injunction will be narrowly tailored in time and scope, and fits the particular circumstances presented here where Clark has filed multiple groundless lawsuits, because if Clark submits the certification, she will be able to continue to ask to proceed *in forma pauperis* to seek judicial redress for claims with arguable merit. *See*, *e.g.*, *Gokool v. Oklahoma City Univ.*, 770 F. App'x 894, 898 (10th Cir. 2019) (affirming injunction requiring litigant to obtain certification of an attorney before filing additional motions); *Carmona v. Adona Med. Health Care Provider*, No. 23cv03, 2023 WL 3081305, at *3 (W.D.N.C. Apr. 25, 2023) (enjoining plaintiff "from filing future pro se actions against [certain defendants] with respect to the conditions of confinement at the UCJ, unless the complaint is certified by an attorney licensed in North Carolina to be non-frivolous"). The injunction will further provide that the Clerk of Court is authorized to return to Clark without docketing them any new case submissions that fail to include the certification. Clark also remains able to file such civil cases without the certification if she pays the filing fee.

## IV. CONCLUSION

For these reasons, Counts I, III, and VI will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C.§ 1915(e)(2)(B)(ii). Count II will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii), but Clark will not be granted leave to amend her Amended Complaint because further attempts to amend this claim would be futile at this time. *Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Robinson v. Delbalso*, No. 22cv2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("[B]ecause Robinson has had two opportunities to amend his complaint, declining to grant further leave to amend was proper."). And Clark will be enjoined from filing certain cases in the future due to her multi-year campaign of filing meritless actions in this District.

Appropriate orders follow concerning the injunction and closing the case.